IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEANINE CAUSEY;
ROBERT CAUSEY,

        Plaintiffs,                         No. 2:10-cv-2781-KJM-EFB PS

    vs.

PORTFOLIO ACQUISITIONS, LLC;
NCC, A DIVISION OF COMMONWEALTH
FINANCIAL SYSTEMS, INC.; OSI
COLLECTION SERVICES, INC.; NCO
GROUP, INC.; CITIGROUP, INC.; ONE
EQUITY PARTNERS, LLC; JP MORGAN
CHASE & CO.; UNITED STATES FEDERAL
TRADE COMMISSION; STATE OF
CALIFORNIA DEPARTMENT OF
CONSUMER AFFAIRS; and
DOES 1 through 25, inclusive,
                                              FINDINGS AND RECOMMENDATIONS
        Defendants.
_____/

        This case, in which plaintiffs are proceeding pro se, was referred to the undersigned under Local Rule 302(c)(21), pursuant to 28 U.S.C. § 636(b)(1). Presently pending before the undersigned are nine motions to dismiss filed by various defendants. Dckt. Nos. 73, 74, 75, 85, 88, 90, 92, 94, 103.

I.    BACKGROUND

        Plaintiffs' second amended complaint alleges that on or around March 11, 2003, plaintiffs were the victims of identity theft and that thereafter, someone used their identities to

1

open a new credit card account through Direct Merchants Bank without plaintiffs' permission ("the account"). 2d. Am. Compl., Dckt. No. 66, ¶ 19. Ultimately, the account was sold by Direct Merchants Bank to OSI Collection Services, Inc. ("OSI") for collection. *Id.* ¶

Plaintiffs allege that on April 4, 2005, they received a letter in the mail from OSI's attorneys demanding payment on the account. *Id.* ¶ 20. Plaintiff Robert Causey then called the attorneys' offices and disputed the validity of the account; however, the individual Mr. Causey spoke with continued to demand payment in full. *Id.* ¶¶ 21, 22. Mr. Causey responded that no payment would be forthcoming and that the matter would have to be litigated. *Id.* ¶ 22.

According to the second amended complaint, sometime after that phone call and before November 2, 2005, the account was either transferred or sold to Portfolio Acquisitions, LLC ("Portfolio"), such that Portfolio now contends that it is the legal owner of the account. *Id.* ¶ 23. Then, on November 2, 2005, plaintiffs were served with a summons, notifying them that they were being sued by Portfolio over moneys allegedly owed on the account. *Id.* ¶ 24. Plaintiffs then countersued Portfolio and Direct Merchants Bank for alleged violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq*. ("the RFDCPA" or "Rosenthal Act"), for alleged unfair business practices in violation of California Business and Professions Code section 17200, and for an alleged breach of plaintiff's original card member agreement with Direct Merchants Bank. *Id.* ¶ 25. Plaintiffs allege that the parties reached a verbal settlement in that case on May 24, 2006, the terms of which were memorialized in a written agreement on May 31, 2006 ("the settlement agreement"), and the case was dismissed with prejudice as a result. *Id.* ¶¶ 26-28, Exs. 2, 3. Plaintiffs allege that at that point, they believed the matter had been resolved. *Id.* ¶ 29.

Plaintiffs allege that sometime after the settlement, the name of the original creditor on the account was changed from Direct Merchants Bank to PNC Bank. *Id.* ¶ 30. According to plaintiffs, on or about August 12, 2012, plaintiffs received a letter in the mail from NCC, a

Division of Commonwealth Financial Systems, Inc. ("NCC"), a letter stating that they were collecting on a debt allegedly owed to Portfolio by plaintiffs on the account. *Id.* ¶ 31, Ex. 1. On or about August 17, 2010, Mr. Causey called NCC's offices and requested contact information for NCC and Portfolio's legal counsel. *Id.* ¶ 32. The NCC supervisor that Mr. Causey spoke with refused to release any information on Portfolio and then "engaged in a conversation in an attempt to collect on the alleged debt." *Id.* Mr. Causey responded that the debt was not owed and that plaintiffs had previously entered into a settlement agreement regarding the dispute. *Id.* According to plaintiffs, "[d]espite the fact that the supervisor was made aware that the debt was not owed, the supervisor proceeded to attempt collection anyway, making such statements as 'the settlement agreement means nothing', 'it's not what I am trying to say sir, it's what I am telling you. You owe the money!', 'you have had the account open for almost 10 years', and '. . . we will contact you every 7 days and you have yourself a good day while you sit there with your papers . . . .'" *Id.*

Plaintiffs allege that after the August 17, 2010 phone conversation, "the NCC account records were tampered with in an effort to backstop the supervisor's version of events, and to create the appearance of a payment arrangement in an effort to reset the statute of limitations clock." *Id.* ¶ 33. On or about September 16, 2010, plaintiffs received in the mail a payment reminder letter from NCC, alleging that a payment arrangement had been made on the account and reminding plaintiffs that a payment was due. *Id.* ¶ 34, Ex. 4. Plaintiffs deny that any such arrangements were made and that any such conversation ever took place. *Id.*

Plaintiffs' second amended complaint names nine defendants: Portfolio, NCC, and OSI, along with NCO Group, Inc. ("NCO"), Citigroup, Inc. ("Citigroup"), One Equity Partners, LLC ("OEP"), JP Morgan Chase & Co. ("JP Morgan"), the United States Federal Trade Commission, and the California Department of Consumer Affairs. *See generally id.* The second amended complaint also includes nine causes of action: (1) violations of the FDCPA by Portfolio and NCC; (2) violations of the Rosenthal Act by Portfolio and NCC; (3) breach of the settlement

3

1 agreement by Portfolio; (4) negligence by Portfolio and NCC; (5) interference with contract by
2 NCC; (6) falsification of records and evidence tampering by OSI, Portfolio, and NCC; (7)
3 malicious prosecution by all defendants; (8) violation of California Business and Professions
4 Code section 17200 by all defendants; and (9) negligence by the United States Federal Trade
5 Commission, and the California Department of Consumer Affairs.  *Id.*

6    Each of the defendants now moves to dismiss some or all of plaintiffs' second amended
7 complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1]  Plaintiffs do not
8 oppose the motions to dismiss filed by defendants State of California Department of Consumer
9 Affairs, Dckt. No. 88, and the United States Federal Trade Commission, Dckt. No. 103, and
10 voluntarily dismiss their claims against those defendants without prejudice.  Dckt. Nos. 115, 116.
11 Therefore, those motions, Dckt. Nos. 88 and 103, should be granted and defendants State of
12 California Department of Consumer Affairs and the United States Federal Trade Commission
13 should be dismissed without prejudice.

14    Additionally, plaintiffs state in their oppositions to Portfolio and NCC's motions to
15 dismiss that they seek to voluntarily dismiss their entire negligence claim (fourth claim for relief)
16 without prejudice.  Dckt. No. 108 at 7 (Opp'n to NCC's Mot.); Dckt. No. 109 at 18 (Opp'n to
17 Portfolio's Mot.).  Plaintiffs also state in their oppositions to Portfolio, NCC, and OSI's motions
18 to dismiss that they seek to voluntarily dismiss their entire claim for falsification of
19 records/evidence tampering (sixth claim for relief).  Dckt. No. 108 at 7; Dckt. No. 109 at 18;
20 Dckt. No. 110 at 9 (Opp'n to OSI's Mot.).  They also state that they seek to voluntarily dismiss
21 without prejudice their claim for malicious prosecution (seventh claim for relief) only against
22 defendant NCC.  Dckt. No. 108 at 7.  Therefore, the motions to dismiss those claims should be
23 granted and those claims should be dismissed without prejudice.

---

[1] Neither NCC nor Portfolio moves to dismiss plaintiffs' FDCPA or Rosenthal Act claims (first and second claims for relief).  Also, Portfolio does not move to dismiss plaintiff's claim for breach of the settlement agreement as to plaintiff Jeanine Causey (third claim for relief).

4

## II. RULE 12(b)(6) MOTIONS TO DISMISS

### A. Standard of Review

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

5

1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. <u>Analysis</u>

Neither NCC nor Portfolio move to dismiss plaintiffs' FDCPA or Rosenthal Act claims (first and second claims for relief). Also, Portfolio does not move to dismiss plaintiff's claim for breach of the settlement agreement as to plaintiff Jeanine Causey (third claim for relief). Additionally, as noted above, plaintiffs have voluntarily dismissed their claims against defendants the State of California Department of Consumer Affairs and the United States Federal Trade Commission (including plaintiffs' entire ninth claim for relief), as well as their negligence claim (fourth claim for relief), their claim for falsification of records/evidence tampering (sixth claim for relief), and their claim for malicious prosecution (seventh claim for relief) against defendant NCC. All other claims against all other defendants are at issue in the pending motions to dismiss and are discussed below.

////

1. Breach of Settlement Agreement – Third Claim Against Portfolio

Defendant Portfolio moves to dismiss plaintiff Robert Causey's claim for breach of the settlement agreement, arguing that plaintiffs fail to allege a settlement agreement or breach as to plaintiff Robert Causey. Dckt. No. 74-1 at 17-18[2] (Portfolio's Mot.); *see also* Dckt. No. 121 at 5-6 (Portfolio's Reply). Portfolio argues that Robert Causey was not named as a defendant in Portfolio's collection action, is not held harmless from further obligation to Portfolio in the settlement agreement, and post-settlement collection letters were not addressed to Robert Causey.[3] Dckt. No. 74-1 at 17-18, citing 2d Am. Compl, Exs. 2, 3. The argument is not well taken.

Plaintiffs' second amended complaint alleges that "CAUSEY has fulfilled their obligation of the agreement" and that Portfolio "committed a material breach of the agreement when they failed to 'release CAUSEY from any further obligations whatsoever' and continued to pursue moneys from CAUSEY by placing the account back out to collection with NCC." 2d Am. Compl., ¶¶ 48-49. The second amended complaint defines "CAUSEY" as including both Robert Causey and Jeanine Causey. *Id.* ¶ 6. Additionally, Exhibit 2 to plaintiffs' second amended complaint, which is a written summary of the terms of the settlement agreement, specifically mentions Robert Causey's "rights, claims, or causes of action" and is signed by Robert Causey. Dckt. No. 66 at 23. Nothing in the other exhibits attached to plaintiffs' second amended complaint contradicts plaintiffs' allegation that both Jeanine and Robert Causey were parties to the settlement agreement or the allegation that Portfolio breached that agreement. Therefore, plaintiffs' allegations are sufficient to withstand Portfolio's motion to dismiss plaintiff Robert Causey's claim for breach of the settlement agreement and that portion of Portfolio's motion must be denied.

---

[2] All citations to page numbers reference the page numbers assigned by this court's case management and electronic case filing system, not the page numbers assigned by the parties.

[3] Plaintiffs oppose the motion. Dckt. No. 109 (Opp'n to Portfolio's Mot.).

2. <u>Interference with Contract</u> – Fifth Claim Against NCC

Defendant NCC moves to dismiss plaintiffs' claim for interference with contract, arguing that NCC's pleadings herein are protected by California's litigation privilege. Dckt. No. 73 at 4-5 (NCC's Mot.); *see also* Dckt. No. 123 at 2-3 (NCC's Reply). Plaintiffs oppose the motion. Dckt. No. 108 (Opp'n to NCC's Mot.).

California Civil Code section 47(b) provides that communications made in or related to judicial proceedings are absolutely immune from tort liability. Cal. Civ. Code § 47(b). The California Supreme Court explains that the purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal.3d 205, 213 (1990). "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing *Silberg*, 50 Cal. 3d at 212). Once these requirements are met, section 47(b) operates as an absolute privilege. *Silberg*, 50 Cal. 3d at 216. "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

Here, plaintiffs' second amended complaint alleges that NCC has raised eight affirmative defenses that question the validity of the settlement agreement, even though NCC was not a party to the agreement, and therefore is interfering with plaintiffs' right to enforce that agreement, which has caused plaintiffs harm. 2d Am. Compl., ¶¶ 59-69. It is apparent from the face of the pleadings that plaintiffs' claim for interference with contract is predicated entirely on plaintiffs' allegation that NCC has raised eight improper affirmative defenses. All of those affirmative defenses were asserted by NCC herein in order to achieve the objects of the litigation and some logical relation to the action. Accordingly, NCC is absolutely immune from any tort

////

liability for asserting those defenses and plaintiffs' claim that NCC interfered with the settlement agreement must be dismissed without leave to amend.

### 3. <u>Malicious Prosecution</u> – Seventh Claim Against All Defendants

Defendants Portfolio, OSI, NCO, Citigroup, OEP, and JP Morgan all move to dismiss plaintiff's claim for malicious prosecution.[4] Dckt. No. 74-1 at 13-14 (Portfolio's Mot.), Dckt. No. 75-1 at 8-10 (OSI's Mot.), Dckt. No. 85-1 at 4-7 (NCO's Mot.), Dckt. No. 90-1 at 3-6 (Citigroup's Mot.), Dckt. No. 92-1 at 3-6 (OEP's Mot.), Dckt. No. 94-1 at 4-7 (JP Morgan's Mot.); *see also* Dckt. No. 121 at 2-4 (Portfolio's Reply), Dckt. No. 122 (OSI's Reply), Dckt. No. 124 (NCO's Reply), Dckt. No. 126 (Citigroup's Reply), Dckt. No. 125 (OEP's Reply), Dckt. No. 127 (JP Morgan's Reply).

Defendants contend that although plaintiffs appear to be arguing that both the initial collection action brought by Portfolio *and* this action are being maliciously prosecuted, both such claims fail. Dckt. No. 74-1 at 13-14; Dckt. No. 75-1 at 9-10; Dckt. No. 85-1 at 4-7; Dckt. No. 90-1 at 4-5; Dckt. No. 92-1 at 4-6; Dckt. No. 94-1 at 4-7. To the extent the claim is based on this action, it fails since this action was initiated by plaintiffs and is therefore not being prosecuted by defendants. *Id.* To the extent the claim is based on Portfolio's initial collection action, it is barred by the two year statute of limitations since the collection action was dismissed with prejudice on June 12, 2006 and this action was not filed until August 30, 2010. *Id.* NCO, Citibank, OEP, and JP Morgan also argue that a malicious prosecution claim based on the collection action is barred for the additional reason that plaintiffs have failed to allege that the collection action was commenced by or at the direction of those defendants, or that the action was terminated favorably to plaintiffs. Dckt. No. 85-1 at 4-6; Dckt. No. 90-1 at 4-5; Dckt. No. 92-1 at 4-6; Dckt. No. 94-1 at 5-6. Plaintiffs oppose the motions. Dckt. No. 109 (Opp'n to Portfolio's Mot.), Dckt. No. 110 (Opp'n to OSI's Mot.), Dckt. No. 114 (Opp'n to NCO's Mot.),

---

[4] As noted above, plaintiffs voluntarily dismiss their claim for malicious prosecution against NCC.

9

Dckt. No. 113 (Opp'n to Citigroup's Mot.), Dckt. No. 112 (Opp'n to OEP's Mot.), Dckt. No. 111 (Opp'n to JP Morgan's Mot.).

Plaintiffs' second amended complaint alleges that at the time the original lawsuit was filed, OSI and Portfolio's attorneys "knew or should have known that the account was the product of identity theft and fraud" and then refused to drop the lawsuit until they knew they were going to lose. 2d. Am. Compl., ¶¶ 77-82. Plaintiffs further allege that after the settlement agreement was executed and the original case was dismissed with prejudice, NCO, OSI, and Portfolio kept the account open and it kept accruing interest, and four years later, Portfolio placed the account back out to collections with NCC. *Id.* ¶¶ 84-85. Plaintiffs allege that NCO, OSI, and Portfolio "continue to refuse to stipulate to injunctive relief in any potential settlement agreement." *Id.* ¶ 86. Plaintiffs contend that "NCO is the parent corporation to OSI and Portfolio and therefore has an ownership stake in the account and stands to benefit financially from any moneys received from this malicious prosecution and other acts complained of in this action." *Id.* ¶ 87. Plaintiffs also allege that Citigroup and OEP have an ownership stake in NCO, and JP Morgan has an ownership stake in OEP, and therefore all of those defendants "stand[] to benefit financially from any moneys received from this malicious prosecution and other acts complained of in this action." *Id.* ¶¶ 88-90. Finally, plaintiffs allege that they have been injured as a direct and proximate cause of defendants' conduct. *Id.* ¶ 91.

Under California law, in order to allege malicious prosecution, a plaintiff must allege that a "prior proceeding, commenced by or at the direction of the malicious prosecution defendant was, (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992). "[A] resolution of the underlying litigation that leaves some doubt as to the defendant's innocence or liability is not a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff. Thus, a dismissal resulting from negotiation, settlement or agreement is generally not deemed a favorable termination of the proceedings." *Id.*

10

Additionally, in California, the statute of limitations for malicious prosecution claims is two years. *See* Cal. Civ. Proc. Code § 335.1; *see also Scannell v. Cnty. of Riverside*, 152 Cal. App. 3d 596, 199 Cal. Rptr. 644, 655 (1984) (holding that malicious prosecution is subject to § 335.1).

To the extent plaintiffs' purported malicious prosecution claim is based on the earlier collection action brought by Portfolio, the claim fails. Plaintiffs have not alleged that the action was pursued to a legal termination favorable to the plaintiff or that it was initiated with malice by any of the defendants. It would also be barred by the applicable statute of limitations since the collection action was dismissed with prejudice on June 12, 2006 and this action was not filed until August 30, 2010. Additionally, to the extent plaintiffs' purported malicious prosecution claim is based on *this* action, it fails since, as defendants argue, this action was initiated by plaintiffs and is therefore not being prosecuted by defendants. A party may not bring a claim for malicious prosecution in the same action in which that party is allegedly being maliciously prosecuted. *Marine Group, LLC v. Marine Travelift, Inc.*, 2012 WL 2683130, at *2, n.1 (S.D. Cal. July 6, 2012) (citing *Babb v. Super. Ct.*, 3 Cal. 3d 841, 845-46 (1971) ("It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor . . . . Because of this requirement, it is obvious that a defendant cannot cross-complain or counterclaim for malicious prosecution in the first or main action . . . , since a claim cannot state a cause of action at that stage of the proceedings. This appears to be the rule, not only in California, but generally."). Therefore, plaintiffs' claim for malicious prosecution should be dismissed. Because amendment would be futile, the dismissal should be without leave to amend.

        4. <u>Unfair Business Practices</u> – Eighth Claim Against All Defendants

Defendants NCC, Portfolio, OSI, NCO, Citigroup, OEP, and JP Morgan all move to dismiss plaintiffs' claim for violation of California Business and Professions Code section 17200. Dckt. No. 73 at 6-7 (NCC's Mot.), Dckt. No. 74-1 at 14-17 (Portfolio's Mot.), Dckt. No. 75-1 at 10-12 (OSI's Mot.), Dckt. No. 85-1 at 7-9 (NCO's Mot.), Dckt. No. 90-1 at 7-9

11

1  (Citigroup's Mot.), Dckt. No. 92-1 at 7-9 (OEP's Mot.), Dckt. No. 94-1 at 7-10 (JP Morgan's
2  Mot.); *see also* Dckt. No. 123 at 3-4 (NCC's Reply), Dckt. No. 121 at 4-5 (Portfolio's Reply),
3  Dckt. No. 122 (OSI's Reply), Dckt. No. 124 (NCO's Reply), Dckt. No. 126 (Citigroup's Reply),
4  Dckt. No. 125 (OEP's Reply), Dckt. No. 127 (JP Morgan's Reply). Defendants argue that
5  plaintiffs have failed to allege "injury in fact and loss of money or property." Dckt. No. 74-1 at
6  16-17; Dckt. No. 75-1 at 11-12; Dckt. No. 85-1 at 8-9. NCO, Citigroup, OEP, and JP Morgan
7  also argue that plaintiffs have not alleged any conduct amounting to any violations of law by
8  those defendants and that it is implausible that plaintiffs suffered any economic loss from
9  conduct by those defendants. Dckt. No. 85-1 at 8-9; Dckt. No. 90-1 at 8-9; Dckt. No. 92-1 at 7-
10 9; Dckt. No. 94-1 at 8-9.

11  Plaintiffs oppose the motions. Dckt. No. 108 (Opp'n to NCC's Mot.), Dckt. No. 109
12 (Opp'n to Portfolio's Mot.), Dckt. No. 110 (Opp'n to OSI's Mot.), Dckt. No. 114 (Opp'n to
13 NCO's Mot.), Dckt. No. 113 (Opp'n to Citigroup's Mot.), Dckt. No. 112 (Opp'n to OEP's Mot.),
14 Dckt. No. 111 (Opp'n to JP Morgan's Mot.).

15  Plaintiffs' second amended complaint alleges that defendants Portfolio and NCC violated
16 California Business and Professions Code section 17200 *et seq*. ("Section 17200"), when they
17 engaged in conduct that violated the FDCPA and the Rosenthal Act and when they engaged in
18 negligent conduct. 2d. Am. Compl., ¶¶ 93-94, 96. Plaintiffs further allege that Portfolio violated
19 Section 17200 when it breached the settlement agreement, *id.* ¶ 95, and that NCC violated
20 Section 17200 when they interfered with plaintiffs' enforcement of the settlement agreement and
21 when its attorney engaged in bullying tactics in an effort to get plaintiffs to drop this action, *id.*
22 ¶¶ 97, 100. Plaintiffs further allege that OSI, Portfolio, and NCC all violated Section 17200
23 when they falsified records and/or tampered with evidence, and when their attorney abused the
24 pro hac vice process and engaged in the practice of law in California without a license. *Id.*
25 ¶¶ 98, 101. Plaintiffs allege that all of the defendants violated Section 17200 when they engaged
26 ////

in malicious prosecution. *Id.* ¶ 99. Finally, plaintiffs allege that they have been injured as a direct and proximate cause of the Section 17200 violations. *Id.* ¶ 102.

California's Unfair Competition Law, section 17200, prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Section 17200 incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000). Violation of almost any federal, state or local law may serve as the basis for a Section 17200 claim. *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of [Section 17200] even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003). To state a claim for unfair business practices, a plaintiff must plead that "(1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Morgan v. AT & T Wireless Svcs., Inc.*, 177 Cal. App.4th 1235, 1254-55 (2009).

California Business and Professions Code section 17204 limits standing to bring a Section 17200 claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "This provision requires [a plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir. 2009), and also requires a 'causal connection' between [defendant's] alleged [Section 17200] violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466, 471-72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-5 (9th Cir. 2010). An absence of facts describing the money or property allegedly lost is fatal to a plaintiff's Section 17200 claim. *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1137 (E.D. Cal. 2010); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th

13

1  310, 323 (2011) ("Proposition 64 requires that a plaintiff have 'lost money or property' to have
2  standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of
3  economic injury.").

4  Here, with regard to plaintiffs' Section 17200 claim against NCO, Citigroup, OEP, and
5  JP Morgan, plaintiffs allege only that those defendants violated Section 17200 when they
6  engaged in malicious prosecution. However, as discussed above, plaintiffs cannot state a claim
7  for malicious prosecution. Accordingly, plaintiffs' Section 17200 claim against those defendants
8  also fails. Because amendment would be futile, plaintiffs' Section 17200 claims against those
9  defendants should be dismissed without leave to amend.

10  With regard to plaintiffs' Section 17200 claim against Portfolio, NCC, and OSI,
11  plaintiffs' claims should also be dismissed, but with leave to amend. Plaintiffs allege that
12  Portfolio and NCC violated Section 17200 when they engaged in conduct that violated the
13  FDCPA and the Rosenthal Act. Neither Portfolio nor NCC moves to dismiss either the FDCPA
14  or the Rosenthal Act claim. Therefore, plaintiffs have adequately alleged that Portfolio and
15  NCC's conduct was unlawful in violation of Section 17200. *See, e.g., Vogan v. Wells Fargo*
16  *Bank, N.A.*, 2011 WL 5826016, at *6-7 (upholding § 17200 claim because court had also upheld
17  claim under Truth in Lending Act, 15 U.S.C. § 1641(g)). However, although plaintiffs allege
18  that they were injured as a result of Portfolio and NCC's conduct, plaintiffs do not specifically
19  allege in the second amended complaint that they suffered any *economic* injury as a result of
20  Portfolio and/or NCC's conduct. Therefore, plaintiffs' Section 17200 claims against Portfolio
21  and NCC must be dismissed. Because the defects could be cured by amendment, plaintiffs
22  should be given leave to amend those claims.

23  With regard to OSI, plaintiff alleges that OSI violated Section 17200 when it falsified
24  records and/or tampered with evidence, and when its attorney abused the pro hac vice process
25  and engaged in the practice of law in California without a license. Plaintiffs also allege that they
26  were injured as a result of OSI's conduct. However, plaintiffs have not adequately alleged how

14

OSI's conduct amounts to a Section 17200 violation and have not alleged that they suffered any *economic* injury as a result of OSI's conduct. Therefore, plaintiffs' Section 17200 claims against OSI must also be dismissed. Because the court cannot say that the defects cannot be cured by amendment, plaintiffs should be given leave to amend that claim.

III. LEAVE TO AMEND

Plaintiffs should be granted leave to file a third amended complaint as provided herein. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (district courts must afford *pro se* litigants an opportunity to amend to correct any deficiency in their complaints). Plaintiffs are informed that the court cannot refer to prior pleadings in order to make an amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Accordingly, once plaintiffs file a third amended complaint, the second amended complaint no longer serves any function in the case. Therefore, "a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint," *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), and defendants not named in an amended complaint are no longer defendants. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

IV. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The State of California Department of Consumer Affairs's motion to dismiss, Dckt. No. 88, be granted and that defendant be dismissed without prejudice.

2. The United States Federal Trade Commission's motion to dismiss, Dckt. No. 103, be granted and that defendant be dismissed without prejudice.

3. NCC's motion to dismiss, Dckt. No. 73, be granted in part and denied in part.

4. Portfolio's motion to dismiss, Dckt. No. 74, be granted in part and denied in part.

5. OSI's motion to dismiss, Dckt. No. 75, be granted in part and denied in part.

15

6. NCO's motion to dismiss, Dckt. No. 85, be granted and NCO be dismissed with prejudice.

7. Citigroup's motion to dismiss, Dckt. No. 90, be granted and Citigroup be dismissed with prejudice.

8. OEP's motion to dismiss, Dckt. No. 92, be granted and OEP be dismissed with prejudice.

9. JP Morgan's motion to dismiss, Dckt. No. 94, be granted and JP Morgan be dismissed with prejudice.

10. Plaintiffs be provided fourteen days from the date of any order adopting these findings and recommendations to file a third amended complaint, if plaintiffs elect to amend their Section 17200 claim against defendants Portfolio, NCC, and/or OSI. Plaintiffs be directed that the amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint," and plaintiffs be admonished that if they do not file a third amended complaint within fourteen days from the date of any order adopting these findings and recommendations, plaintiffs' second amended complaint will remain their operative complaint (with claims remaining against Portfolio and NCC for alleged violations of the FDCPA and Rosenthal Act and a claim remaining against Portfolio for breach of the settlement agreement by Portfolio).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

////

16

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2012.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE